## Case No. 3,704.

### DEAN v. BATES et al.

[2 Woodb. & M. 87.] [1]

Circuit Court, D. Massachusetts. Oct Term, 1846.

ADMIRALTY JURISDICTION — LIBEL TO ANNUL MORTGAGE ON VESSEL — LIBEL IN REM AND IN PERSONAM.

1. A libel does not lie in the district court to enforce the surrender or avoidance of a mortgage of a ship, on the ground that it has not been duly prosecuted, or the claims under it not seasonably made.

[Cited in The J. B. Lunt, Case No. 7,246; The Mayflower v. The Sabine, 101 U. S. 389.]

2. The remedy, if any, in such case, is in chancery, and will not usually be settled there till the disputed rights of the parties under the instrument are first adjudicated on at law.

[Cited in Weston v. Minot, Case No. 17,453; Hill v. The Golden Gate, Id. 6,491.]

3. A libel is informal if it proceed against both the vessel and the owners.

[Cited in Ward v. The Ogdenburgh, Case No. 17,158; The Alida, 12 Fed. 344.]

This was an appeal from a decree of the district court, dismissing a libel between these parties. [Case unreported. The libel was by William H. Dean against J. D. Bates and another and the brig Flora.] The libel was originally filed Janury 14, 1846, setting out that Dean was owner of the brig Flora, and having certain unsettled accounts with Bates & Co., the two respondents, he executed to them a conveyance on the 20th of August, 1845, to secure what might be due. It was alleged to have been the design of the conveyance to give security on said brig in a certain event, for any thing due on a voyage of the schooner Nile, where Bates & Co. had made some advances, and the accounts for which were in their possession and control. The libellant in that conveyance acknowledged himself indebted to Bates & Co. $1000, the instrument to be void if that sum was paid, or whatever was due from said Dean, in three months from the date thereof. That within the said three months, Dean called on the respondents for their accounts, but they neglected to furnish any; and that he was ready and offered to pay any thing due. That said instrument has not been discharged, but still remains an incumbrance on the vessel, and lessens her value to the damage of Dean, and he, therefore, prays the court to pronounce it void, and no longer an incumbrance, and grant such other relief as

---

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

to law and justice appertain. On the 16th of January aforesaid, the two respondents appeared and filed the following exceptions: 1. That this court has not jurisdiction to enforce the claim set up. 2. That the possession of the b.ig Flora is not in the respondents, but this court, as appears by its records. 3. That this court has already declared the said instrument to be void, and no incumbrance on the brig. 4. That an appeal has been taken from the decree, declaring this, and is now pending, and the respondents are entitled by law to have its validity there settled. 5. That the libel is informal, and without sufficient cause. A copy of the instrument referred to being produced by the counsel for the libellant, it purported to be a bottomry bond, executed June 13, 1845, by the libellant to the respondents, for $1000, reciting that a loan had that day been made by them to him of this sum, advanced on said brig of 242 tons burthen, and if he paid them said sum, or the balance due, within three months from the date, then the obligation was to be void. And as security for the loan, the brig was mortgaged and pledged, and her registry set out, and concluded by a stipulation, that it was to be understood between them, that if any of the loan and interest shall remain due after the expiration of the three months, the respondents might sell the brig, and account for the balance.

The exceptions were argued at this term by F. C. Loring in their favor, and F. W. Sawyer against them.

WOODBURY, Circuit Justice. The first objection to this libel is, that the district court, where it was filed, had no jurisdiction over the matter prayed for. If that matter had been to enforce a clear maritime lien on the vessel, like a good bottomry bond, or to settle a contest between several part owners, as to the employment of a vessel, or for the recovery on some contract of admitted admiralty jurisdiction, such as to pay a ransom or an insurance, the d.strict court, by having jurisdiction in all civil cases of an admiralty character under the act of 1789 [1 Stat. 73], could clearly sustain this libel. But the prayer in this case is resisted for an alleged want of jurisdiction, for reasons bringing it into much doubt. Because, firstly, it is not to enforce a contract; but is for the avoidance and surrender of an incumbrance on the vessel. It is doubted here, whether that incumbrance be any thing more than a mortgage, and not a valid bottomry bond, and if the former, whether there is clearly conferred over it any jurisdiction in admiralty for any purpose whatever. But it not being absolutely necessary here to settle these last questions, I shall at once proceed to the consideration of the fir-: objection. This rests on the ground, that nothing is due upon the claims secured by the incumbrance, and that the continu-

ance of a groundless incumbrance on the vessel injures its sale, and can and ought therefore to have been annulled by the district court. But such a prayer is, in form and substance, a case of equity cognizance, belonging to chancery, independent of admiralty. And though proceedings in admiralty are, as argued by the counsel for the libellant, founded on the civil law like those in chancery (2 Browne, Civ. & Adm. Law, 507), yet the former are only one branch of the civil law, relating to maritime matters (The Orleans v. The Phoebus, 11 Pet. [36 U. S.] 175); while chancery powers extend to other and numerous cases, not belonging to the admiralty. On this ground it is laid down in the books of practice, that admiralty courts have no general chancery powers, as, for instance, in common cases, over enforcing the specific performance of contracts,—over the correction of mistakes and the issuing of injunctions, or the rescinding of ordinary contracts on account of their being void for fraud. Conk. Pr. 60. But these general powers are vested in courts of equity as such, or in courts of common law, on their statutory equity side. The last is the situation of the circuit courts of the United States. Its district courts are by acts of congress not invested with any such chancery powers, and when they possess any, it is merely by virtue of the admiralty and maritime jurisdicti)n bestowed on them, and in order to enforce that. But a court of admiralty, as such, never requires nor exercises such general chancery power as is asked to be exercised here. Sir William Scott, in The Juliana, 2 Dod. 521, says: "This court certainly does not claim the character of a court of general equity; but it is bound by its commission and constitution to determine the cases submitted to its cognizance upon equitable principles, and according to the rules of natural justice." Whatever extensive control abroad as well as here may be exercised by admiralty courts over bottomry bonds, and the vessels pledged by them, it is not believed that they ever extended to an interference so as to avoid or annul an incumbrance.

It has been expressly ruled, that a prayer to the admiralty court to reform a contract, though clearly a maritime one, like a policy of insurance, is a matter proper for chancery powers, and not those belonging to the district court, as a court of admiralty. Andrews v. Essex Fire & Marine Ins. Co. [Case No. 374]. One of these chancery powers is to require the surrender of contracts, or to issue an injunction against the use of them under a bill quia timet, or a bill of peace to prevent further litigation; and generally it is exercised in those cases alone where the rights of the parties have been already settled; or the party is in possession who is applying. 2 Story, Eq. Jur. § 852. For even a court of chancery will not usually grant such a request as is here presented, if the rights of

the parties concerning the instrument are, as here, still in contest, and no jurisdiction is given to it by alleging fraud, mistake in a trust, or asking a disclosure, or introducing some such matter of clear chancery jurisdiction over such subjects. But here a contest exists still between these parties as to the debt which the incumbrance was given to secure; and none of the most usual grounds for chancery to interfere are alleged. It is true, that in a libel in the district court to enforce that mortgage on the vessel, the libel was dismissed, and an appeal taken here, which has never been prosecuted. But this does not show, nor is it averred, in the present proceeding, that nothing was in fact due either in praesenti or in futuro on the claims secured by that mortgage; and till that question is settled in some other proceeding, even a court of chancery would probably be obliged to decline such request as is made here, except where allegations like those before named are also introduced to give it jurisdiction to settle the title itself. The other libel does not judicially appear to have disposed of the rights or merits of these parties. It is on the record a naked dismissal of the libel, and might perhaps well have been from want of jurisdiction, as in this case. That was one exception taken to it. Allowing, then, that a court of chancery could in such an application settle a question of title, between the parties, when it had jurisdiction of the subject-matter, as if it was a contest as to a mistake, or fraud, or trust, or discovery, or an injunction, or account required, or something else clearly of chancery jurisdiction, this case might not be proceeded in even then. Though on this I give no opinion. It is true, that the rule on this subject is laid down more broadly in some books in chancery, describing chancery powers; but as it is not questionable, that a mere admiralty court possesses no such power, I forbear from now going further into the true boundaries of it in a court of chancery. I see only one other objection beside this, among those enumerated in the exceptions, which requires comment in the present state of things between these parties,—that is, the vessel being now in possession of the libellant, and the appeal referred to in one of the exceptions, having since been abandoned. That other objection is the misjoinder of the vessel and the owners in one and the same libel. This involves a proceeding both in personam and in rem, in the same case, and contravenes the settled rules in admiralty proceedings. See rules 14–17; [The Orleans v. The Phoebus] 11 Pet. [36 U. S.] 175. Being objected to seasonably here, it seems fatal to the libel as it now stands. For these reasons the decree in the district court, dismissing the libel, is affirmed.